FILED 05

2010 MAY 18  P 3: 48

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1    **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2

3    Name  ROAM     JEFFREY

4      (Last)         (First)         (Initial)

5    Prisoner Number  C·80656

6    Institutional Address  CTF CENTRAL  D WING 235L    **(PR)**

7    P.O. BOX 689  SOLEDAD, CA. 93060    **RS**

8    =====================================================

9        **UNITED STATES DISTRICT COURT**   **2143**
        **NORTHERN DISTRICT OF CALIFORNIA**

10    ROAM, JEFFREY

11    (Enter the full name of plaintiff in this action.)    )

12          vs.           )    Case No. _____
                    )    (To be provided by the clerk of court)

13    BEN CURRY, WARDEN    )

14    P.A. SANTIAGO, CCII    )   **COMPLAINT UNDER THE CIVIL RIGHTS ACT,**

15    R. HAGER, CCII       )   **42 U.S.C §§ 1983**

16    JOHN DOE 1-25, INCLUSIVE    )

17    (Enter the full name of the defendant(s) in this action)   )

18    *[All questions on this complaint form must be answered in order for your action to proceed..]*

19    I.    Exhaustion of Administrative Remedies

20        [**Note:** You must exhaust your administrative remedies before your claim can go

21        forward. The court will dismiss any unexhausted claims.]

22        A.    Place of present confinement  CTF SOLEDAD, CALIF.

23        B.    Is there a grievance procedure in this institution?

24               YES (X)     NO ( )

25        C.    Did you present the facts in your complaint for review through the grievance

26           procedure?

27               YES (X)     NO ( )

28        D.    If your answer is YES, list the appeal number and the date and result of the appeal at

COMPLAINT           - 1 -

each level of review. If you did not pursue a certain level of appeal, explain why.

1. Informal appeal (SEE ATTACHMENT A)

_SCREENED OUT_

2. First formal level _____

3. Second formal level _____

4. Third formal level _____

E. Is the last level to which you appealed the highest level of appeal available to you?

YES ( )    NO ( )

F. If you did not present your claim for review through the grievance procedure, explain

why. ISSUE WAS PRESENTED RESPONSIBLY TO THE APPEALS DEPT, BUT DUE TO THE COMPLEXITY OF THE PROBLEM THE APPEALS COORDINATOR SCREENED IT OUT.

II. Parties

A. Write your name and your present address. Do the same for additional plaintiffs, if any.

JEFFREY ROAM
CTF CENTRAL D WING 235L
PO BOX 689
SOLEDAD, CA 93900

B. Write the full name of each defendant, his or her official position, and his or her place of

employment.

BEN CURRY WARDEN, CTF SOLEDAD, CAL 93060

PA SANTIAGO CCII, CTF SOLEDAD, CAL 93060

R.HAGER CCII, CTF SOLEDAD, CAL 93060

COMPLAINT                          - 2 -

CLAIM #1

1  DEFENDANTS KNOWINGLY AND MALICIOUSLY ARE
2  SUBJECTING PLAINTIFF TO CRUEL AND UNUSUAL
3  PUNISHMENT IN VIOLATION OF DEFENDANTS EIGHTH
4  **III.   Statement of Claim** AMENDMENT RIGHTS.

5      State here as briefly as possible the facts of your case. Be sure to describe how each
6  defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any
7  cases or statutes. If you have more than one claim, each claim should be set forth in a separate
8  numbered paragraph.

9  THE WARDEN, BEN CURRY, AND ALL EMPLOYEES SUBJECT TO
10  HIS AUTHORITY ARE FORCING ME AGAINST MY WILL TO
11  LIVE DOUBLE CELLED WITH A "FIXED" TOILET FLUSHING
12  SYSTEM. (SEE ATTACHMENT 'A'). THIS IS UNSANITARY,
13  HAZARDOUS AND THREATENS MY HEALTH AND SAFETY
14  ON A DAILY BASIS. THE IMPLMENTION OF THE TOILET
15  FLUSHING SYSTEM IS BEING UTILIZED AS A DEVICE FOR
16  "PUNITIVE CONTROL" WITH INTENT TO CAUSE INJURY. IN AN
17  ATTEMPT TO APPEAL MY LIVING CONDITIONS MY 602 APPEAL
18  WAS SIMPLY SCREENED OUT. (SEE ATTACHMENT 'A'). THIS
19  WAS DONE TO IN EFFORT TO PROHIBIT ME FROM OBTAINING
20  THE BELIEF I REQUESTED. THEREFORE, I HAVE EXHAUSTED
21  MY ADMINISTRATIVE REMEDIES WITH REGARD TO THIS
22  **IV.   Relief** ISSUE.

23      Your complaint cannot go forward unless you request specific relief. State briefly exactly what
24  you want the court to do for you. Make no legal arguments; cite no cases or statutes.

25  MONETARY DAMAGES FROM DATE OF AUGUST, 2008
26  UP TO PRESENT DATE AND EVERY DAY THEREAFTER IN
27  THE AMOUNT OF $100.00 PER DAY; TO BE SINGLE
28  CELLED; TOILET TO BE FIXED TO FLUSH AT WILL;

**COMPLAINT**                                  - 3 -

1  AND AN INJUNCTION ORDERING OTF SOLEDAD TO CEASE

2  UTILIZING TIMED FLUSHING DEVICES AND ANY OTHER

3  AWARDS OR ORDERS THE COURT DEEMS APPROPRIATE.

4     I declare under penalty of perjury that the foregoing is true and correct.

5

6     Signed this _____ day of ____ 1-5-09 ____, 20____

7

8                          Jeff W Ram

9                          (Plaintiff's signature)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                              - 4 -

CLAIM #2

1  DEFENDANTS WILLINGLY VIOLATE PLAINTIFFS
2  RIGHT TO DUE PROCESS AND EQUAL PROTECTION
3  BY DISCRIMINATING AGAINST HIM PERSONALLY.

4  **III.    Statement of Claim**

5      State here as briefly as possible the facts of your case.  Be sure to describe how each

6  defendant is involved and to include dates, when possible.  Do not give any legal arguments or cite any

7  cases or statutes.  If you have more than one claim, each claim should be set forth in a separate

8  numbered paragraph.

9  C.I.F. AT SOLEDAD IS REFUSING TO ASSIGN ME WITH
10  A JOB IN ORDER FOR ME TO FULFILL MY OBLIGATION
11  TO THE BOARD OF PRISON TERMS, WITH REGARDS TO
12  THE BOARDS EXPECTATIONS AS TO WHAT IM EXPECTED
13  TO ACCOMPLISH WHILE INCARCERATED.
14  (SEE ATTACHMENT B FOR DETAILED DESCRIPTION)
15  CDCR HAS HONORED A WORK INCENTIVE POLICY
16  WHICH EXCLUDES ME FROM WORKING BECAUSE
17  THE POLICY PUTS ME IN A "NON CREDIT EARNING"
18  STATUS, THROUGH NO FAULT OF MY OWN.
19  THIS ADVERSELY AFFECTS MY CHANGES OF BEING
20  CONSIDERED FOR PAROLE, WHILE OTHERS ARE
21  ALLOWED TO WORK/TRAIN IN JOBS/VOCATIONS

22  **IV.    Relief**  I WOULD OTHERWISE QUALIFY FOR.

23      Your complaint cannot go forward unless you request specific relief.  State briefly exactly what

24  you want the court to do for you.  Make no legal arguments; cite no cases or statutes.

25  MONETARY DAMAGES FROM DECEMBER 2008 UP TO
26  PRESENT DATE IN THE AMOUNT OF $100.00 A DAY;
27  TO BE ASSIGNED A JOB OR VOCATION; AND ANY
28  OTHER AWARD OR ORDER THE COURT MAY

COMPLAINT                      - 3 -

1 DEEN NECESSARY AND APPROPRIATE.

2

3

4  I declare under penalty of perjury that the foregoing is true and correct.

5

6  Signed this _____ day of _l  5 -09_, 20____

7

8

9  (Plaintiff's signature)

COMPLAINT                          - 4 -

ATTACHMENT 'A'

**State of California**
**CDC FORM 695**
**Screening For:**
~~CDC 602 Inmate/Parolee~~ Appeals
~~CDC 1824 Reasonable~~ Modification or Accommodation Request

RE: Screening at the FIRST Level

*December 15, 2008*

DW 2352

*ROAM, C80656, ~~NORAT2000000249L~~*

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*This appeal constitutes an abuse of the appeal process pursuant to CCR 3084.4. Your appeal cannot be understood or is obscured by pointless verbiage or voluminous unrelated documentation CCR 3084(c).*

*Limit of one contiuation page may be attached.*

**P.A. Santiago**, CCII / **R. Hager**, CCII
Appeals Coordinators
Correctional Training Facility

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be
automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be
appealed. If you believe this screen out is in error, please return this form to the Appeals
Coordinator with an explanation of why you believe it to be in error, and supporting
documents. You have only 15 days to comply with the above directives.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. _____ | 1. _____ | 9- 1 |
| | 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME. | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| ROAM, J | C-80656 | Ø | DWING 235 |

A. Describe Problem: IM BEING FORCED, AGAINST MY WILL, TO DOUBLE CELLING WITH A FIXED TOILET FLUSHING SYSTEM — (SEE ATTACHMENT PG 1-13). CURRENTLY I LIVE UNDER THE THREAT OF UNHEALTHY, UNSANITARY LIVING CONDITIONS WHICH UNDERMINE MY SENSE OF HEALTH. THESE CONDITIONS ARE CRUEL AND INTENTIONALLY INFLICTED WITH THE INTENT TO CAUSE INJURY. IM SUFFERING PHYSICALLY, EMOTIONALLY AND PSYCHOLOGICALLY DUE TO OVERCROWDING, UNSANITARY, UNCONSTITUTIONAL CONDITIONS IN CELL LIVING. IM TREATED LESS THAN HUMAN BY BEING FORCED INTO DANGEROUS CONDITIONS OF CONFINEMENT WITHIN THE INSTITUTIONS THAT MAKE UP THE C.D.C.R.

If you need more space, attach one additional sheet.

B. Action Requested (1) TO BE SINGLE CELLED IMMEDIATELY;
(2) TOILETS TO BE RETURNED TO CONDITION WITHOUT A LOCKING MECHANISM;
(3) MONETARY DAMAGES TO BE AWARDED FOR THE PHYSICAL, EMOTIONAL AND PSYCHOLOGICAL ABUSES THE CDCR HAS CAUSED ME.

Inmate/Parolee Signature: _Jeff W Roam_        Date Submitted: _12-11-08_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

Staff Signature: _____        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____        Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed        CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

RECEIVED
30-20-24
DEC 15 2008
w 11/5/08
CTF APPEALS

– NUMBER 08-01 and included sections

3269 and subsections 3315(f)(5)(N)(1) and (2) which became effective

March 17, 2008, with the expectation of being adopted into Article 1.6.,

Section 3269 of Subchapter 4, Chapter 1 of Title 15, Division 3, of

the California Code of Regulation, concerning housing assignments for

inmates, and the displinary ramifications for failure to comply.

It is well known that the Secretary of the California Department of

Corrections and Rehabilitations (CDCR), has authority pursuant to the

provisions granted within Government Code Section 12838.5, Penal Code

(PC) Section 5058, and rulemaking authority granted by PC § 5058.3, in

order to implement, interpret and make specific PC 5054.

On March 7, 2008, the CDCR filed Notice of Adoption of Emergency

Regulations with the Office of Administrative Law concerning inmate

housing assignments within the above NOTICE # 08-01. The Notice Pub-

lication/Regulations Submission was assigned Emergency Number 2008-

0307-02E.. THIS EMERGENCY REGULATION IS UNCONSTITUTIONAL AS WELL AS

THE ACT OF CDCR TO IMPLEMENT ANY/AN EMERGENCY AND/OR ANY REGULATION
THAT VIOLATES AN INMATES CONSTITUTIONAL RIGHTS.


It is well known throughout the State of California at this time
that the issue of overcrowding in the CDCR is before the Federal Courts,
and that the Courts have ruled that the overcrowding has caused uncon-
stitutional conditions within the CDCR medical and mental health depart-
ments. Every taxpayer in the state is anticipating a reduction in the
CDCR inmate population, and the Governor has along with the legislature
has been trying to come to some kind of agreement to reduce the states
prison population which is bursting at the seams due to overcrowding.
A.B. 900 was signed into law last year and is suppose to provide CDCR
and certain counties with 53,000 new beds over the next few years. The
Governor also has been transferring inmates out of state, and, Schwar-
zenegger proposes to release up to 28,000 low-risk inmates all due to
the effects of the unconstitutional overcrowding! (~~████████████████~~
~~████████████████████████████████████████████████████████~~
~~████████████████████████████████████████████████████████~~
~~████████████████████████████████████████████████████████~~
~~████████████████████████████████████████████████████████~~).


The Supreme Court has allowed the CDCR in the past to infringe on
rights of general application due to safety and security issues. The
constitutional right to be free from cruel and unusual punishment is
not a "right of general application" - it applies only to those con-
victed of a crime, not to the public at large - and thus is never
balanced against intitutional needs!

2.

On page 3 of NOTICE-Inmate housing Assignments # 08-01 the CDCR
Secretary attempts to make inmate double celling assignments legal
and explains that it has been a generally accepted practice that
inmates are expected to double cell. The Office of Administrative
Law in February 2008 invalidated the CDCR's April 25, 2003 Memoran-
dum...(DD58-03) which subjected inmates who refused to accept double
cell assignments to disipline in administrative segregation! The CDCR
also admits in the same paragraph that this issue of double celling
has been filed in court. **Why would the CDCR have to file this issue
in a state court if double celling were in fact--legal--!?**

The fact of the matter is that double celling is illegal and vio-
lates an inmates constitutional rights against cruel and unusual pun-
ishments! Prisoners have an absolute right, guaranteed by the Eight
Amendment to the U.S. Constitution, to be free from cruel and unusual
punishments; United States Constitution, Eight Ament; see also, Calif-
ornia Constitution, Article I, § 17. Unlike other federal constitut-
ional rights, which must be balanced against security and other con-
cerns when applied to prisoners, violations of the Eight Amendment
can never be justified. "The Eight Amendment is not a 'maybe' or
'sometimes' proposition! Toussaint v McCarthy(9th Cir.1986) 801 F.2d
1080, cert.denied, 107 S.Ct. 2462(1987).

Revelations of barbarous living conditions inside America's prisons
in the 1960s and 1970s led federal courts to develop minimum standards
that state prisons must meet to avoid violating the constitutional
prohibition against cruel and unusual punishments. Hutto v Finney(1978)
437 U.S. 678,685[96 S.Ct.2565;57 L.Ed.2d 522]; Newman v Alabama(5th

3.

Cir.1977) 559 F.2d 283, modified in other respects, Alabama v Pugh
(1978) 438 U.S. 781,[98 S.Ct.3057;57 L.Ed.2d 1114]; Battle v Anderson
(10th Cir.1977) 564 F.2d 388; Holt v Sarver(E.D.Ark. 1970) 309 F.Supp.
362, aff'd 442 F.2d 304(8th Cir.1971); Palmigiano v Garrahy(D.R.I.1970)
443 F.Supp. 956. To constitute cruel and unusual punishment under the
Eight Amendment, prison conditions must inflict unnecessary or wanton
pain or be contrary to civilized standards of decency. Rhodes v Chap-
man(1981) 452 U.S. 337, 346-347[101 S.Ct.2392;60 L.Ed.2d 59].


The United States Courts have indicated that the base requirement
of 50 square feet of cell space per inmate is required to achieve the
minimal standard for human decency and meet the United States Constit-
ional requirement under the Eight Amendment...the courts also explain
that failure to meet this requirement exposes inmates to both physical
and mental injury due to long term exposure of overcrowding!


Overcrowding necessarily involves excess limitation of general mov-
ment as well as physical and mental injury from long term exposure.
Remedial decrees have issued limiting to "design capacity". See Miller
v Carson, 401 F.Supp. 835 (M.D.Fla.1975); Ambrose v Malcolm, 414 F.Supp.
485 (S.D.N.Y.1976). "Rated capacity" or "design capacity" was directed
by remedial decree in Taylor v Sterfett, 344 F.Supp. 411(N.D.Tex.1972)
see also; to the same general effect; Hamilton v Schire, 388 F.Supp.
318(M.D.Ala.1976). "One court said flatly"..."50 square feet is the
minimal acceptable to comport with the Constitution". Gates v Collier,
423 F.Supp. 732,743(N.D.Miss.1976). (Please note at this time attach-
ment # 2. once again and see that CDCR is well past design capacity!).

4.

"A policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison...practice offends a fundamental constitutional guaranted, federal courts will discharge their duty to protect constitutional rights". <u>Procunier v Martinez</u>, 416 U.S. 396, 94 S.Ct. 1800, at 1807 (1973).

Under the 14th Amendment,"a prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law". <u>Coffin v Reichard</u>, 143 F.2d 443, 445(6th Cir. 1944).

[01]  The American Correctional Instition has concluded that 75 square feet is the minimumally accepted standard per man.

[02]  The National Sheriffs Assn. Manual on Jail Architecture (1975) asserts that single occupancy detention rooms should average 70 – 80 square feet (at page 62).

[03]  The National Counsil on Crime and Delinquency Model Act for the Protection of Rights of Prisoners (1972) concludes that "not less fifty (50) square feet of floor space in any confined sleeping area should be provided as minimal per man!

[04]  The Report of the Special Civilian Committee for the United States Army Confinement System (1970) indicates that the Army standard in 1969 was 55 square feet, and the Army, not known for "coddling", adheres to that standard per man.

5.

All of teh above conclusions deal with "sleeping space" and contemplate additional space for other purposes, such as dayrooms. All are reletively contemporary. All indicate the "contemporary" standard. Pugh v Locke, 406 F.Supp. 318, requiring single occupancy isolation cells of 60 square feet. Martinez v Jimenez, 409 F.Supp. 582(D.P.R. 1976) "not less than 10x7".

In the Gates v Collier case, supra, the Court observed with respect to the standard of 50 square feet of living (sleeping) space per man, **"No one takes issue with this base requirement for human decency and this Court holds a failure to achieve that minimal standard contravenes the Eight Amendment prohibiting Cruel and Unusual punishments".** see: **Chapman,at 1021**, 434 F.Supp. 1007, 1018, 1021. See also: **Trop v Dulles,** 356 U.S. 86, 101; 78 S.Ct.590; Helling v McKinney, 509 U.S. 25; 113 S. Ct. 2475, 2480(1958).

This writer does not stop with the issue of 50 square feet per man required by case law and accepted as the bare minimum expected to meet the civilized standards of human decency. There are in fact further elements of forcing inmates to double celling that violate an inmates constitutional rights under the Eight Amendment and present Cruel and Unusual living conditions.

California now has strict rules on when prisoners may be subjected to AIDS test for reasons other than their convictions. AIDS testing is not a required condition of double celling and is only permissive when the prison's chief medical officer decides to allow it! See California Penal Code §§ 7510 - 7512. Double celling in a 50 square foot cell with an

6.

inmate that may be exposed to HIV or has AIDS is beyond the scope of human decency...the prison population is one of the highest risk classes of individuals to contact and carry AIDS, HIV, and HCV hepatitis C virus. Forcing an inmate to double cell with someone without the necessary testing of these deadly virus's is the same as forcing an inmate to the virus itself! For an inmate to have to live under these conditions is cruel and unusual punishment! and presents "imminent danger", and is sure or very likely to cause serious illness and needless suffering. See Helling v McKinney(1993) 509 U.S. 25;[113 S.Ct.2475;125 L.Ed.2d 22];also Wallis v Baldwin(9th Cir.1995) 70 F.3d 1074. The right to refuse double cell assignments because the CDCR did not impliment any testing for a deadly contagious disease is and rightly so constitutional and cannot be taken from an inmate. Personal safety is any individuals first and foremost concern! Everyone has a right to protect themselves from contagious disease contracted through small minute blood pathogens and body fluids and secretions! Two grown men living in a cell designed for only one individual highly increases the risk of contacting infected blood pathogens, secretions and body fluids. This in itself is contrary to civilized standards of decency.

According to the Ninth Circuit Court of Appeals, what the general public would think about a particular condition is of extreme importance. See Hoptowit v Ray(9th Cir.1982) 682 F.2d 1237; Keenan v Hill (9th Cir.1996) 83 F.3rd 1083. The general public opinion and what they think is of more importance than expert opinion! The risk of contracting AIDS, HIV or HCV hepatitis C virus is a serious concern and is increasingly more so as prison conditions continue to get worse due to overcrowding. ⓔⒹⒸ

7.

The CDCR Secretary completely fails to address this issue of contagious disease in the NOTICE Numbered 08-01 and made Effective March 17, 2008. The Emergency Notice should be recalled until CDCR can address other serious unconstitutional issues before trying to bully inmates into living in double cell assignments with only 50 square feet and designed for one person! The CDCR is irresponsible in the making of Emergency Rules and should be investigated and reported to the Law Revision Commission and the Office of Internal Affairs! Lives are at risk in order to satisfy CDCRs illegal actions which has been going on for far too long!

The CDCR wishes to implement punishment to inmates who refuse to accept a double cell assignment according to this Emergency Notice even though no court has agreed on the constitutionality of their actions! CDCR actually request and has been granted according to this Emergency Notice to remove inmates who refuse double cell assignments from the general population and place them in administrative segregation and confiscate personal property, loss of canteen, vendor packages, telephone calls, for 90 days and 180 days! All this without clue about the constitutionality of their actions. How much is to much for the CDCR to violate inmate constituional rights before we put a responsible administration in charge of the CDCR rule making process!?

There is another concern which also needs to be considered before any remedial sanctions are enforced by the CDCRs unconstitutional powers. Some inmates continue to use drugs, make and drink alcohol, smoke tobacco, keep drug paraphernalia, keep and manufacture weapons, keep razor blades all in their assigned cells. All of these things are considered contraband by the CDCR and when found in any cell both of

8.

inmates who occupy the cell where the contraband is found receive a
rule violation CDCR 115 and most times are taken to the ad-seg unit to
wait to for a disposition. The attached case of In re Richard S. ZEPEDA
on Habeas Corpus, 47 Cal.Rptr.3d 172, as attachment # 3. reveals just
how the CDCRs rule making powers have once again violated an innocent
inmates constitutional rights. Mr. Zepeda followed CDCRs then April 25,
2003, memorandum (DD58-03) and accepted an illegal double cell assign-
ment. A search of the cell revealed (3) razor blades in a cup which was
accessible to both inmates in a (so-called) common area on a shelf. The
CDCR Sergeant J. Valenzuela who found the razors ask Johnnie Valadez,
who occupied cell 106 with Zepeda, if he recognized the cup with the
razors in it. Valadez admitted that the razors were his. Even with the
statement and admission that the razors belonged to Valadez, Zepeda was
found guilty of possession of weapons and was sentenced to 360 days
loss of credits, almost one full year of time because of the illegal
double cell assignment. Zepeda appealed and lost in the Court of Appeal.
See: Attachment # 3.

These types of conditions are now going to be forced on individual
inmates and at what cost to the innocent. No screening for any prior
possessions of contraband was mentioned in the Emergency NOTICE 08-01,
the CDCR is perfectly willing to just let staff decide who goes into
what cell assignments. An inmate who has no prior contraband posses-
sions and who does not want another inmate in the same cell assignment
who has had prior contraband possessions should be allowed to exercise
his right to remain free from corruption and corruptable influence in
his cell..! Thousands of cases just like the case of Zepeda have been
the cause of innocent inmates losing years of good time credits due
to the unregulated CDCRs rule making and enforcement policies!

The combination of some conditions of confinement may constitute an Eight Amendment violation though each would not do so alone. Perhaps double-celling or overcrowding alone does not constitute cruel and unusual punishment. However, the problems caused by overcrowding and forced double-celling and straining institutional resources beyond their limits, creates "living conditions [that] invite court orders". The legal question, under the Supreme Court precedent, is whether double-celling due to overcrowding results in a deprivation of a minimal necessity of life.

The federal courts have already ruled that CDCRs medical and mental health departments are unconstitutional due to overcrowding. Now the CDCR wishes to implement forced double-celling without considerations of personal safety and "imminent danger." due to failure to properly screen inmates for serious infectious disease such as AIDS, HIV, and HCV hepatitis C virus. Prior testing for these serious infectious diseases are mandatory in promoting personal safety of inmates who are to be forced to accept double assignments in cells that are designed for only one person! The risk is great if an inmate that is not infected..... is infected for failure to screen those who are infected! This is unacceptable and illegal.

For the reasons as stated in these comments, this writer will conclude with the words of one federal judge who eloquently described the horrible circumstances that California prisoners are sometimes forced to endure; "dry words on paper can not adequately capture the senseless suffering and sometimes wretched misery that defendants' unconstitutional practices leave in their wake. The anguish of

10.

desending into serious mental illness, the pain of physical abuse,
or the torment of having serious medical needs that simply go unmet
is profoundly difficult if not impossible, to fully fathom...."

These terrible conditions are caused sometimes by neglect, some-
times by design and most often by the failure of the state to devote
the resources necessary to run a humane and safe prison system. In
some ways, the worst aspect of the situation is that the legal,
political and bureacratical systems allow so little room for change.

It is sincerly hoped that somehow these serious issues reach the
minds able to recognize that the CDCR has to be questioned in every
thing they do because of the fact that they (CDCR) are the fox who
has been appointed to watch their own hen house!

Respectfully I request that the emergency NOTICE 08-01 be recalled
until the CDCR has fully investigated the consitutionality of their
immediate aclions contained within emergemcy NOTICE 08-01 and/or
until the courts have had their say in these constitutional issues.

One last thing I feel has to be added about double-celling with
another who lets say has razor blades, or say even tobacco...both
inmates receive CDCR 115 write ups and are found guilty because
the contraband was found in their cell. The one inmate that is in-
nocent is a lifer and is going up for the board of prison terms in
one year...the board finds the inmate unsuitable for parole because
of the contraband being found in his cell being a serious rule vio-
lation and denies the inmate for (3) years until his next board

11.

hearing where the board members bring up the same contraband is-
sue and deny the inmate once again for (3) more years! This has
happened and is happening at board hearings! By the way, the inmate
who the contraband actually belonged to was paroled after his five
year term was up for possession of drugs!

Contraband is a serious issue and has serious consequences and
should not be taken lightly by staff members when forcing one who
has been convicted of serious rule violations for contraband into
a double cell assignment with someone who does not want and has not
had any contraband violations! The same goes for a serious conta-
gious disease like AIDS, and HCV, hepatitis C virus, these are very
serious issues, yet they are not mentioned in the Emergency NOTICE
# 08-01 as far as ideas or preventive measures! As well as going
against the constitutional rights of inmates and the civilized
standards of common decency when forcing inmates to live in cells
that are only 50 square feet and then squeezing in another person
when that cell was designed only for one man! How much is too much!

These issues are plain and the CDCR is breaking the laws and put-
ting thousands of inmates at risk for disease, receiving extra time
in prison for unwarranted contraband violations, and going against
what the federal courts are saying and trying to do along with the
Governor and the legislature which are all trying to reduce over-
crowding!

12.

There is also another issue that would fall under cruel and unusual punishment. CDCR has newly added in our cells not only a low flushing toilet, but also has limited us to two flushes in a five-minute period. If you make a mistake and flush the toilet a third time within the five-minute period, the water/toilet shuts off for one hour. Your toilet will <u>not flush</u>. So, if you or the inmate CDCR forced you to live with flushes the toilet by mistake, and there is feces or urine or etc., you are forced to sit in a cell with that floating in the toilet. The toilet is two and one-half feet from the bed. Very close to you. We should never be forced to be in a cell with feces or urine in the toilet and not be able to flush. Please understand because words cannot explain. If I am on my bed, some else is two and one-half feet from me using the toilet knowing that each time something leaves your body, feces or urine, the person using the toilet flush so the other man two and one-half feet away does not have to smell your waste. So, it would be easy to mistakenly flush the toilet. We are given no clock or timepiece. Please try to understand that with over-crowding many people get sick; vomit and diarrhea, etc., yet cannot flush the toilet when needed, and due to over-crowing many things happen that cause a lockdown at such times we are forced to eat all our meals in a cell. You could and I have been forced to eat my meals in a cell with another man's feces floating in the toilet just a few feet from my meal. This is cruel and unusual.

ATTACHMENT   B

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:     AUG 0 1 2008

In re:    Roam, C-80656
          Correctional Training Facility
          P.O. Box 686
          Soledad, CA 93960

          IAB Case No.: 0728775          Local Log No.: CTF 08-00187

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner Michael Jensen, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I  APPELLANT'S ARGUMENT:**  It is the appellant's position that he was transferred to the Correctional Training Facility (CTF) on a non-adverse transfer that has turned into an adverse transfer. The appellant stated that he is a Life term inmate and the Board of Parole Hearings stated he should stay assigned. The appellant indicates that since arriving at CTF he has been denied an assignment or trade and was told it could be years before he received an assignment. The appellant believes this denies him the right to earn his freedom. The appellant requests to be provided an assignment and be provided a Work Group/Privilege Group (WG/PG) "A-1" program or be transferred to an institution where he can receive training.

**II  SECOND LEVEL'S DECISION:**  The reviewer found that the appellant's placement in an assignment was dependent upon by the date he was placed in his WG/PG. The Second Level of Review (SLR) noted placement on the list can change daily by the arrival or departure of inmates on the list. The CTF response reminded the appellant that neither the California Code of Regulations, Title 15, (CCR) nor CDC Operations Manual (DOM) guarantee an inmate a job. The staff response informed the appellant of the need for ethnic balance on the work site. Stating the institution was in compliance with the rules pertaining to inmate assignments, the appeal was denied by the SLR.

**III  DIRECTOR'S LEVEL DECISION:**  Appeal is denied.

    **A.  FINDINGS:**  CTF correctly responded to the appellant concerning his placement in receiving an assignment. The rules and policies regarding obtaining an assignment have changed and are delineated in CCR 3043.6(a)(3). Depending on the appellant's case factors he may find himself receiving an assignment in the near future or be required to wait while inmates with a closer release date or who have been WG A-1 longer than the appellant are provided the opportunity to obtain an assignment. In order to understand the rules concerning assignments the appellant is encouraged to read CCR 3043.6 and DOM 53130.9 which explain the process of assigning inmates. The Director's Level of Review (DLR) reminds the appellant that inmates eligible for the Bridging Program might receive an assignment before him even though they arrived at CTF after his arrival.

    The DLR has reviewed the appeal documentation and has determined the appellant's rights have not been violated. The DLR shall not modify the SLR.

    **B.  BASIS FOR THE DECISION:**
CCR: 3040, 3043, 3043.6, 3375
DOM: 53130.9

    **C.  ORDER:**  No changes or modifications are required by the institution.

ROAM, C-80656
CASE NO. 0728775
'PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
         Appeals Coordinator, CTF

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region          Log No. MAR 6 - 2008          MAR 2 7 2008

1. _____          1. 08-00187

2. ____CTF-S____          2. 2ND LEVEL

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME: Jeff Roam          NUMBER: C-80656          ASSIGNMENT: U A   A-1-A          UNIT/ROOM NUMBER: Hasher 249

A. Describe Problem: on 11-20-08 I was transferred to Sokdad, my classification score is 16 But Because of Life sentence, For Housing Placement my Classification score stays at 19, also I am Close-B- This was a non Adverse transfered, Fact is This has turned in to an Adverse transfer, when I went to my Last PBT Hearing I was told to stay working I got a traded, There are no trades here offered to me, also I was told it could Be years Before I get a job, I am Being denided The Right to earn my freedom, I was an A-1-A worker Before This transfered, also Being denied A-1-A worker program, Being Housed on a Level III yard

If you need more space, attach one additional sheet.

B. Action Requested: Be given a job or Put in a trade, and Be transfered to a prison where This can happen, also Be given all A-1-A workers program, to stop all adverse acts on me, to Be monattly Damage's awarded.

Inmate/Parolee Signature: Jeff W Roam          Date Submitted: 1-14-08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

BYPASS

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

_____

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

RECEIVED
JAN 16 2008
CTF APPEALS

CDC Appeal Number: 08-00187

RECEIVED
MAR 14 2008
CTF APPEALS

RECEIVED
APR 2008
INMATE APPEALS BRANCH

**First Level**  ☐ Granted  ☑ P. Granted  ☐ ~~Denied~~  ☐ Other _____

**E. REVIEWER'S ACTION** (Complete within 15 working days): Date assigned: JAN 1 6 2008   Due Date: MAR 3 - 2008

Interviewed by: _See attached_ _____

_____ HL EN _____

Staff Signature: L. ADAMS JR. _____  Title: Sergeant   Date Completed: 3-5-08

Division Head Approved:
Signature: _____  Title: CCII   Returned
Date to _____ 2008

**F.** If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to institution or Parole Region Appeals _____ within 15 days of receipt of response. 602 Returned to me on 3-7-08. The title is _____ clearly state no special treatment or preference, will be given to any _____ or inmates, to do so would DISCRIMINATE against the rest, that is _____ clearly DISCRIMINATING against me, you clearly state you are _____ on top of work list. I want the practice stopped. Action requested. _____

Signature: Jeff W _____   Date Submitted: 5

**Second Level**  ☐ Granted  ☐ P. Granted  ☑ Denied  ☐ Other  MAR 1 4 2008   Due Date: APR 1 _ 2008

**G. REVIEWER'S ACTION** (Complete within 10 working days): Date assigned: _____
☐ See Attached Letter

Signature: _____ CCII   Date Completed: 3-26-08
Warden/Superintendent Signature: _____  Date Returned: MAR 2 7 2008

**H.** If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. 602 Returned some on 4-2-08   SEE ATT. PAGE MARKED _____

Signature: Jeff W Raam   Date Submitted: 4-8-08

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

**DIRECTOR'S ACTION:** ☐ Granted  ☐ P. Granted  ☑ Denied  ☐ Other _____
☑ See Attached Letter   Date: _____

CDC 602 (12/87)

MARKED (H)

1  you clearly state in your responce that inmates
2  who receive earning credit of day for day half time, are
3  put on the work list above me. And other inmates who
4  earn credits are also put on the work list above me.
5  Even inmates who arrive a month or a year after
6  me, who earn credits are still again placed above me
7  on the work list. This is a discriminate act against me
8  by Soledad State Prison. Also I am being Refused workers
9  A-1-A yard. I am A-1-A But, because of your Program,
10  A-1-A's is not allowed to go to A1-A workers yard.
11  Because you will not allow me a Job, even though I am
12  A-1-A I am being denied A-1-A yard. Also I have
13  16 Points as my classification score, but my housing
14  code is 'H' 19 Level II (2). I am being illegaly housed
15  on a Level III (3) yard, I was also told to have my-
16  self put on other work list as well as Trade lists to
17  help myself get a Job, I am a C/o B, because of that I am
18  not allowed to be placed on any Trade list. Being Refused
19  a Trade because of misuse of a C/o A program on C/o B
20  inmates. Action Requested same.

Jeff W Roam

Jeff Roam
C-80656
4-8-08.

## DEPARTMENT OF CORRECTIONS AND REHABILITATION
### Correctional Training Facility
### Soledad, California

## SUPPLEMENTAL PAGE

First Level Response: **CTF-S-08-00187**

**NAME: ROAM J.**　　　**CDC#: C-80656**　　　**HOUSING: RA-249**

## APPEAL DECISION: PARTIALLY GRANTED

**APPEAL ISSUE:** 1) I am A1A unassigned and want to be placed in job or a trade.
　　　　　2) I am a lifer and will be going to the board soon and have nothing to show them, no trade or job to earn my freedom.

**ACTION REQUESTED:** 1) I would like to be assigned to a job or trade to meet some of the things I need for the board. To be transferred to a facility where I can be afforded these opportunities.

**INTERVIEWED:** Today

## APPEAL RESPONSE:

It is the policy of the California Department of Corrections and Rehabilitation, that all vacant inmate assignment positions be filled utilizing the Distributed Data Processing System (DDPS). The Correctional Training Facility, Inmate Assignment Office (IAO), follows this policy.

DDPS sorts all waiting lists by, First day-for day credit eligible inmates approved for the Bridging Program (PC 2933) but not assigned (Work Group A-2); Second day-for-day credit eligible inmates already designated Work Group A-1; Third those inmates not PC 2933 day-for-day credit eligible designated Work Group A-1; Fourth those inmates not PC 2933 day-for-day credit eligible designated Work Group A-2. The First and Second group of inmates are further sorted by the inmates release dates, with the inmates having the earliest release dates sorted first within their respective groups (First and Second). Day-for-day credit eligible inmates shall receive priority assignment, with those inmates with the earliest release dates given first priority. The Third and Fourth group of inmates are further sorted by Work Group effective dates, with the inmates having the most senior dates sorted first. To fill a vacant position, the IAO takes the inmate at the top of the appropriate waiting list, taking into consideration, day-for-day credit eligibility by release date, custody, ethnic balance, institutional needs, institutional security, and available resources.

• PC 2933 states in part "It is the intent of the legislature that persons convicted of a crime and sentenced to the state prison under section 1170 serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the director of correction for performance in work, training or education programs established by the Director of Corrections."

• PC 2933 also states in part "Worktime credits a privilege, not a right Worktime credit must be earned and may be forfeited pursuant to the provisions of Section 2932." "Every prisoner shall have a reasonable opportunity to participate in a full-time credit qualifying assignment in a manner consistent with institutional security and available resources".

You are on the Support Services Waiting list. Your placement on this list satisfies the Penal Code requirements. You are not PC 2933 day-for-day credit eligible and will receive assignment to a work/education program based on CCR Title 15, section 3043.6. Your position on a waiting list is related to your Work Group (WG) and Work Group Date (WGD). Your WG is A-1 and WGD is 03/04/04. There is no maximum time limit an inmate can wait on a list before he is assigned. Based on the above case factors, and the limited number of jobs, it is impossible to estimate how long it will take before the IAO can assign you to a program. Be assured the IAO attempts to place all inmates in programs as fast as possible. When your name is reached on a waiting list, you will be placed in a work or trade program where your custody allows.

If an error has occurred, please send a list (CDC numbers and, if possible, last names) of any inmate(s) that have received a job before you, that meet all of the following criteria:

1. The inmate(s) were A2B the day of assignment.
2. Your Work Group Date is prior to the inmate(s).
3. The inmate(s) were/was assigned from a waiting list that you are/were on, the date the inmate(s) assignment was made.
4. You are the same race (ethnic balance) as the inmate(s).
5. You custody is the same or lower than the inmate(s).
6. Your Cell/Bed location does not prohibit you from working in the same assignment number.
7. The inmate (s) was not day-for-day credit eligible.

Your appeal has been PARTIALLY GRANTED in that, you will be placed into a work/education program within the established guidelines as soon as you're *name is* reached on the appropriate waiting lists.

A thorough review of your appeal package has been completed. All disputes relative to your appeal have been spoken to.

L. Adams Jr. Correctional Sergeant
Inmate Assignment Office
Correctional Training Facility

      (d)    Your position on any waiting list is determined by the date of your Work Group date not the date you arrived at CTF or a new facility. The other inmates that you refer to all have Work Group dates prior to yours. That is the process of the Initial Classification Committee and the Distributed Data Processing System (DDPS), "The Computer System."

Dissatisfied with the First Level Response, you submitted your appeal for a Second Level of Review, stating: 1) You continue to be discriminated against because you still due not have a job, and 2) Other inmates continue to be placed at the top of the waiting list.

    (1)   The reasonable opportunity is satisfied by virtue of your placement on the waiting list. Nor are there any time provision given in either the PC, DOM, or CCR, Title 15 that tell how long is a reasonable length of time before a prisoner is to be assigned.

    (2)   During the time you are classified A1A, you receive credits consistent with your current commitment case factors. There are no provisions in either the PC or CCR, Title 15, which convey an absolute right to a job. Nor do they entitle you to receive retroactive A1A credits due to the length of time it takes for your name to reach the top of the Assignment Waiting List.

    (3)   Being on a waiting list with A1A status does not guarantee that you will move directly to the top, other variables can delay this process. Any inmate on "A1A" status will have a priority over an inmate on "A1A" status. Inmates, who arrive at 3/3/04 on "A1A" status or are taken out of a program non-adversely on "A1A" status, will go ahead of you on the list.

    (4)   Work sites are ethnically balanced in accordance with the ethnic breakdown of the facility. Positions at the worksite are filled accordingly. These conditions affect your status on the waiting list.

    (5)   You are placed on the Support Services Waiting List per the Inmate Assignment Office.

REGULATIONS: The rules governing the issues are:
PC 2933.1 (a) (b) (c) (d)

California Code of Regulations (CCR), Title 15, Section 3040 (a-c) (1-5) (d)
California Code of Regulations (CCR), Title 15, Section 3375 (a-c)

Institutional staff has been in full compliance with the CCR, Title 15, as well as the California Penal Code in this area. There is no indication that your individual rights and guarantees have been denied. You have not been adversely affected, and you are being afforded a reasonable opportunity to participate in a full time, credit-qualifying assignment in a manner consistent with the institutional security and available resources. By virtue of your name being on the waiting list meets the reasonable opportunity requirement in the Penal Code.

You have not provided any new information upon which to change the disposition of the First Level Response, nor information that would substantiate your request to be granted an assignment; therefore, based on the above, your appeal is DENIED at the Second Level of Review in that you being treated fairly. You will be placed in a assignment when your name reaches the top of the appropriate waiting list, taking into consideration, custody, ethnic balance, institutional needs, institutional security and available resources.

**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**Correctional Training Facility**
**Soledad, California**

## SUPPLEMENTAL PAGE

**RE:** CTF APPEAL LOG No. *CTF-S-08-00187*
Second Level Reviewer's Response

*ROAM*                          *C– 80656*                          *RA – 249*

## APPEAL DECISION:

### *DENIED*

## APPEAL ISSUE: (13 - Work Incentive)

That you be afforded A1A status and privileges and be placed in a job at the first available opportunity.

## APPEAL RESPONSE:

In your appeal you state the following:

(1) A1A work group/privilege group and entitled to a job or assignment.

(2) Want a job or trade to show the BPT.

A thorough review of your appeals package, all of your attachments, and your Central File has been completed and reveals the following:

(1) On 3/3/08 Sergeant Adams interviewed you to provide you the opportunity to further explain your appeal and present supporting information or documentation.

(2) During the First Level Review, you were advised:

(a) Your position on any waiting list is determined by the date of your *Work* Group/Privilege Group (WG/PG) date. You are A1A and your ~~Work Group~~ date is 3/4/04. This means that any inmate with an earlier WG/PG date than you will be assigned ahead of you depending on the needs of the institution and job requirements.

(b) Your position on any waiting list is determined by the date of your *Work* Group/Privilege Group (WG/PG) date. You are A1A and your Work Group date is 3/4/04. This means that any inmate with an earlier WG/PG date than you will be assigned ahead of you depending on the needs of the institution and job requirements. When your name is reached on the waiting list and you meet all the requirements of the position, you will be assigned and the DDPS will make sure no other inmate with a Work Group date later than yours will be assigned before you.

(c) There is no time limit on an inmate's placement on any waiting list. Therefore, your position on any waiting list changes daily due to the number of inmates added to or removed from a waiting list due to facility moves, paroles, transfers, buses or a particular race that may be needed to keep the ethnic balance within the affected assignment location.

Second Level Reviewer's Response
CTF Appeal Log #CTF-S-00187
Page 3 of 3

Reviewed By:

P. G. Dennis CCII, Appeals Coordinator

3-26-08
Date

C. Noll, Chief Deputy Warden

3-27-08
Date

PGD/mr

cc: Inmate's Central File
Appeals File

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY

Date:  December 31, 2008

HON.  ROBERT O'FARRELL,

Judge;  LORIELLE M. FLETES
, Bailiff;                                              , Deputy Clerk
                                                             , Reporter

| | |
|---|---|
| John Beres, #K-64498 | Case No. [NOT ASSIGNED] |
| Petitioner/Plaintiff | Minute Order:  ORDER |
| vs., | |
| M.L. Lopez, (CDCR) Correctional Officer, et. al. | |
| Respondent/Defendant | Type of Case |
| | Statistical Count: _____ |

**APPEARANCES: None**

The court has received Petitioner/Plaintiff's application for Waiver of Court Fees and Costs [in forma pauperis application]. The Court is unable to process this application without further information. Petitioner/Plaintiff must submit: (1) a six month certified trust account statement; and (2) a certificate of funds in prisoner's account, as required by Government Code Section 68511.3(e) [copy attached]:

**SO ORDERED.**

Dated: _____**DEC 3 1 2008**_____

_____
HONORABLE ROBERT O'FARRELL
JUDGE OF THE SUPERIOR COURT

Clerk 361 (Rev 04/04)

1/6/09

Six month certified trust account statements and certificate of funds was sent to Monterey County Superior Court on 12/26 for Inmate Beres, K64498. I have provided copies. Mail may have crossed in transit. For any questions, please call me 831-678-3951 x4529. Yolanda

982.2(b)(1)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

JEFFREY ROAM C·00656
CTF CENTRAL D WING 235
P.O. BOX 689
SOLEDAD, CA. 93960

ATTORNEY FOR *(Name):*

INSERT NAME OF COURT, JUDICIAL DISTRICT, AND BRANCH COURT, IF ANY:

US. DISTRICT COURT
NORTHERN DISTRICT OF CALIF
450 GOLDEN GATE AVE
SAN FRANCISCO, CA 94102

CASE NAME:

| | CASE NUMBER: |
|---|---|
| **CIVIL CASE COVER SHEET**<br>**(Case Cover Sheets)** | |

1. **08** Case category *(Insert code from list below for the ONE case type that best describes the case):*

01 Abuse of Process
02 Administrative Agency Review
03 Antitrust/Unfair Business Practices
04 Asbestos
05 Asset Forfeiture
06 Breach of Contract/Warranty
07 Business Tort
08 Civil Rights *(Discrimination, False Arrest)*
09 Collections *(Money Owed, Open Book Accounts)*
10 Construction Defect
11 Contractual Arbitration
12 Declaratory Relief
13 Defamation *(Slander, Libel)*
14 Eminent Domain/Inverse Condemnation
15 Employment *(Labor Commissioner Appeals,*
   *EDD Actions, Wrongful Termination)*
16 Fraud
17 Injunctive Relief

18 Insurance Coverage/Subrogation
19 Intellectual Property
20 Enforcement of Judgment *(Sister State, Foreign,*
   *Out-of-Country Abstracts)*
21 Partnership and Corporate Governance
22 PI/PD/WD—Auto *(Personal Injury/Property Damage/*
   *Wrongful Death)*
23 PI/PD/WD—Nonauto
24 Product Liability
25 Professional Negligence *(Medical or Legal Malpractice, etc.)*
26 Real Property *(Quiet Title)*
27 RICO
28 Securities Litigation
29 Tax Judgment
30 Toxic Tort/Environmental
31 Unlawful Detainer—Commercial
32 Unlawful Detainer—Residential
33 Wrongful Eviction
34 Other: _____

2. Type of remedies sought *(check all that apply):*   a. ☒ Monetary   b. ☒ Nonmonetary   c. ☒ Punitive
3. Number of causes of action: _____
4. Is this a class action suit?  ☐ Yes  ☒ No

Date:   1-5-09

JEFFREY ROAM                              ▶ Jeff M Roam
_____           _____
(TYPE OR PRINT NAME)                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTE TO PLAINTIFF**

* This cover sheet shall accompany each civil action or proceeding, except those filed in small claims court or filed under the Probate Code, Family Law Code, or Welfare and Institutions Code.
* File this cover sheet in addition to any cover sheet required by local court rule.
* Do not serve this cover sheet with the complaint.
* This cover sheet shall be used for statistical purposes only and shall have no effect on the assignment of the case.

Form Adopted by Rule 982.2
Judicial Council of California
982.2(b)(1) [New July 1, 1996]
   Mandatory Form

**CIVIL CASE COVER SHEET**
**(Case Cover Sheets)**

THOMSON
★
WEST



C.T.F. SOLEDAD Central
Jeff Roam  C-80 656
D-235L
P.O. Box 689
Soledad Calif
93960-0689

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIF
450 GOLDEN GATE AVE.
SAN FRANCISCO, CALIF. 94102

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JF

non balance of print out,

42-legal
pages side.

$ 00.00⁰
02 1M
0004229813
MAILED FROM ZIPCODE 93960
JAN 06 2009
UNITED STATES POSTAGE

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5, 28 U.S.C. § 1746)

I, _____ JEFFREY ROAM _____ , declare:

I am over 18 years of age and a party to this action. I am a resident of _____

_____ CTF SOLEDAD _____ Prison,

in the county of _MONTEREY_ ,

State of California. My prison address is: _CTF CENTRAL D WING 235_ ,

_P.O. BOX 680, SOLEDAD, CA 93260_ .

On _____ ,
(DATE)

I served the attached: _42 USC 1983 CIVIL COMPLAINT FORM_

_LETTER TO CLERK OF THE COURT_ (13 PG ATTACHMENT A)
(DESCRIBE DOCUMENT)         (9 PG ATTACHMENT B)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVE.
SAN FRANCISCO, CA 94102

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _1-J=09_ _____
(DATE)                    (DECLARANT'S SIGNATURE)

Civ-69 (Rev. 9/97)                          ::ODMA\PCDOCS\WORDPERFECT\22832\1

-9-